NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0331n.06

No. 23-3200

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 22, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MAHER SABRI HANNA, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| v. | ) | THE UNITED STATES BOARD OF |
| | ) | IMMIGRATION APPEALS |
| TODD W. BLANCHE, Acting U.S. Attorney General, | ) | |
| Respondent. | ) | OPINION |

Before: WHITE, STRANCH, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Maher Sabri Hanna, a 49-year-old Iraqi man now living in the United States, applied for deferral of removal under the Convention Against Torture, asserting that he would more likely than not be tortured by, or with the acquiescence of, the Iraqi government. The Immigration Judge ("IJ") held a hearing on Hanna's petition but determined that one of Hanna's witnesses, Daniel Smith, was not qualified as an expert. The IJ still considered Smith's testimony as a percipient witness and considered other documentary evidence as well as expert declarations. The IJ denied Hanna's petition, holding that he had not met his burden of establishing a likelihood of torture by Iraqi officials or with their acquiescence. The BIA affirmed. Hanna now appeals the denial of CAT protection and the failure to qualify his witness as an expert. Because we find that the BIA's ruling was clearly erroneous and not supported by substantial evidence, we **GRANT** Hanna's petition, **VACATE** the BIA's decision, and **REMAND** the case to the BIA for proceedings consistent with this opinion.

## I. BACKGROUND

Hanna, a native and citizen of Iraq, is a Chaldean Christian. On March 11, 1983, Hanna lawfully entered the United States with his family when he was five years old. In two separate occasions in 1999, he was convicted of marijuana-related offenses in Michigan state court. On February 8, 2000, the Government charged that Hanna was subject to removal based on these criminal convictions, and in 2001, an IJ ordered him removed to Iraq. Hanna, however, was never removed.

In 2017, Hanna moved to reopen his case because of changed country conditions in Iraq. He applied for asylum, withholding of removal, and CAT protection, but the IJ denied reopening his case because (1) Hanna's drug convictions rendered him ineligible for asylum and withholding and (2) he failed to establish that deferral of removal under CAT was appropriate. On August 7, 2017, Hanna appealed the denial to the BIA. On May 16, 2018, the BIA determined that Hanna had established materially changed country conditions in Iraq, sustained the appeal, and remanded the case to the IJ.

On remand, Hanna's only remaining claim was for deferral of removal under the Convention Against Torture. 8 C.F.R. § 1208.16(c)(2). The IJ held two hearings and heard testimony from Daniel Smith, whom Hanna offered as an expert witness on Iraqi country conditions. The IJ did not qualify Smith as an expert based on his lack of formal education in the fields of journalism and political science and his lack of peer-reviewed work, but the IJ admitted his testimony as a percipient witness. The IJ also considered extensive documentary evidence and expert declarations from Belkis Wille, Scott Portman, and Shamiran Mako—submitted on Hanna's behalf—and from Dr. Denise Natali, Dr. Michael Rubin, and Dr. Douglas Ollivant—submitted on the Government's behalf.

On September 26, 2019, the IJ denied Hanna's application for CAT protection. The IJ held that based on the totality of the evidence presented, Hanna had not carried his burden of showing that it was more likely than not that he faced a particularized threat of torture by or with the acquiescence of the Iraqi government based on his religion, criminal history, Americanization and ties to the United States, lack of family in Iraq, or lack of Iraqi identity documents. Weighing the evidence from both parties, the IJ concluded that the Government's experts were more persuasive than those of Hanna's.

Hanna appealed to the BIA, which affirmed the IJ's decision. The BIA determined that the IJ did not clearly err in allowing Smith to testify as a percipient witness only and not as an expert witness. And as to the merits of Hanna's claim, the BIA affirmed the IJ's decision that Hanna had not established that it is more likely than not that he would be tortured by or with the acquiescence of Iraqi officials. Hanna timely appealed.[1]

## II. DISCUSSION

### A. Standard of Review

We review the BIA's decision as the final agency determination when the BIA has reviewed the IJ's decision and issued a separate opinion. *Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021). And we also review the IJ's decision to the extent the BIA adopted its reasoning. *Id.* We review legal conclusions de novo, and factual findings under the substantial evidence standard. *Turcios-Flores v. Garland*, 67 F.4th 347, 353–54 (6th Cir. 2023) (citing *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020)). Under this standard, factual findings "'are

---

[1] On April 12, 2024, the panel ordered that the case be held in abeyance while Hanna pursued an appeal of his criminal convictions in the Michigan Court of Appeals. On July 15, 2025, the Michigan Court of Appeals affirmed Hanna's convictions. *People v. Hanna*, No. 368481, 2025 WL 1948670, at *1 (Mich. Ct. App. July 15, 2025). The panel then ordered the parties to file supplemental briefing addressing the impact of these appeals, "or any relevant caselaw issued since the original briefs were filed." R. 39, which the parties did. The Government contends that the appeals have no impact on Hanna's petition before this Court, and Hanna agrees that his convictions stand.

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Zometa-Orellana*, 19 F.4th at 976 (quoting *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014)).

    **B.**    **Legal Analysis**

    1.    <u>CAT Protection</u>

Hanna sought protection under CAT, asserting that Iraqi officials would more likely than not torture him or acquiesce in his torture by the Popular Mobilization Forces ("PMF"), because he is a Chaldean Christian and a criminal deportee from the United States, with no valid Iraqi identity documents, no family in Iraq, and no Arabic skills. He argues that the BIA erred because it failed to consider the risk of torture in the aggregate.

To qualify for CAT protection, a petitioner must show that he would more likely than not face a "particularized and likely threat of torture" if he returned to his country of removal. *Patel v Bondi*, 131 F.4th 377, 382 (6th Cir. 2025); *Vasquez-Rivera v. Garland*, 96 F.4th 903, 911 (6th Cir. 2024). Such torture must be inflicted by a public official or with a public official's consent or acquiescence. *Mateo-Esteban v. Garland*, 125 F.4th 762, 768 (6th Cir. 2025) (citing 8 C.F.R. § 1208.18(a)(1)). Torture is defined as follows:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind . . .

8 C.F.R. § 1208.18(a)(1). In assessing whether the petitioner is likely to face torture upon removal, the BIA must consider the petitioner's risk of torture in the aggregate. *Abdulahad v. Garland*, 99 F.4th 275, 290 (6th Cir. 2024). A petitioner, therefore, "'need not demonstrate that the probability

of torture by one of the entities,' or for one of the reasons, 'taken alone, exceeds 50%. Instead, the question is whether the cumulative probability of torture by all of the entities, or for all reasons, exceeds 50%.'" *Id.* (quoting *Marqus v. Barr*, 968 F.3d 583, 590 (6th Cir. 2020)). However, the aggregate analysis is a "qualitative, non-quantitative" assessment, one that does not require a "statistical weighing of the probabilities." *Saleh v. Garland*, 100 F.4th 742 (6th Cir. 2024). The BIA conducts an aggregate analysis where its holding addresses all of the petitioner's alleged sources of torture together, *Marqus v. Barr*, 968 F.3d 583, 589 (6th Cir. 2020), or where it explicitly states that it must consider petitioner's claim "in terms of the aggregate risk of torture" and concludes that the IJ applied that approach, *Yousif v. Garland*, 53 F.4th 928, 935 (6th Cir. 2022). But we have determined that the BIA failed to conduct an aggregate analysis where it "focused almost entirely on [petitioner's] status as Chaldean Christian" and dismissed evidence that did not relate to torture based on that reason. *Abdulahad*, 99 F.4th at 290.

Hanna alleges that the BIA failed to consider the risk of torture in the aggregate because the BIA weighed each claim of torture only individually. Although the BIA and the IJ considered all Hanna's reasons for torture, the IJ's decision failed to consider Hanna's risk of torture in the aggregate. The IJ characterizes Hanna's argument in the alternative, stating that Hanna fears torture "based on his religion, his criminal history, his Americanization and ties to the United States, his lack of family ties in Iraq, *or* his lack of identity documents." AR 81 (emphasis added). Such a framing indicates that the IJ was not considering the risk of torture to Hanna under all these bases combined. Indeed, the IJ concluded that the "record does not show that it is more likely than not that [Hanna] faces a particularized threat of torture *on any of these bases*." *Id.* (emphasis added). The IJ then held that the "record shows that there is little particularized threat of torture to [Hanna], whether from Da´esh, the PMF, *or* from other government agents." AR 83 (emphasis

added). The IJ never concluded that Hanna also failed to establish a risk of torture on *all these bases*.

The BIA affirmed the IJ's reasoning, holding that Hanna had not "established that it is more likely than not that he would be tortured by or with the acquiescence (to include willful blindness) of [a] public official in Iraq if removed to that country." AR 6. We have considered such language to be indicative of an aggregate approach, but only where it was coupled with the BIA's explicit statement that it was using the aggregate approach and lacked any suggestion that the IJ failed to apply it. *See, e.g.*, *Yousif*, 53 F.4th at 935. Here, however, the IJ's decision gives reason to believe that the aggregate approach was not used and nothing in the BIA's decision explicitly assesses the risk of torture in the aggregate. We "may not assume that the [BIA] considered factors that it failed to mention in its opinion." *Abdulahad*, 99 F.4th at 291 (quoting *Preçetaj v. Sessions*, 907 F.3d 453, 458 (6th Cir. 2018)).

To be clear, the BIA is not required to expressly state that it considered the risk of torture in the aggregate, but it must be apparent from the decision that it did so. Because it is not apparent whether the BIA and the IJ considered the risk of torture in the aggregate, we grant Hanna's petition, vacate the BIA's decision, and remand the case to the BIA to address the aggregate risk of torture in the first instance.

### 2. Expert Witness

Hanna asserts that the BIA committed legal error when it affirmed the IJ's decision to not qualify Daniel Smith as an expert. He contends that the decision was arbitrary and capricious because the BIA did not provide adequate reasoning and the disqualification of Smith was inconsistent with rulings in other cases before it. The issue of Mr. Smith's qualifications as an expert witness has arisen in numerous Sixth Circuit cases, with some petitioners challenging an

IJ's decision not to qualify Smith as an expert and others pointing out inconsistencies in the IJ's treatment of Smith's qualifications. We have responded differently to these arguments, sometimes assessing whether a due process violation occurred and other times considering whether the decision was arbitrary and capricious. *Compare Makdesion v. Garland*, No. 22-3436, 2023 WL 2972548, at *2, *4 (6th Cir. Apr. 17, 2023) (arbitrary and capricious), *with Zakariya v. Garland*, No. 23-3047/3445, 2024 WL 869660, at *3 (6th Cir. Feb. 29, 2024) (due process rights).

The Government construes Hanna's argument as one of due process. Respondent's Br. at 29 ("The agency did not violate Mr. Hanna's due process [rights] in disallowing Mr. Smith to testify as an expert witness. . ."). In doing so, it relies on our decision in *Marqus*, where we considered whether the IJ's decision to exclude a witness's expert declaration violated the petitioner's due process rights. 968 F.3d at 590–92. But *Marqus* is distinguishable from the case before us because, there, the decision noted that "Marqus challenges on due process grounds the exclusion of country-conditions expert." *Id.* at 590. Here, Hanna contends that the IJ's decision not to qualify Smith was arbitrary and capricious. Further, the IJ in *Marqus* excluded the expert's declaration entirely, *id.* at 590–91, as opposed to the decision of the IJ here to both admit and consider Smith's testimony as a percipient witness. *See, e.g.*, *Al-Koorwi v. Barr*, 837 F. App'x 323, 331 (6th Cir. 2020) (declining to recognize the due process framework is as applicable to decision to permit a proposed expert witness to instead testify as a percipient witness). Accordingly, we review Hanna's claim under the arbitrary and capricious framework.

A BIA decision "can be arbitrary and capricious if it applies the wrong legal standard to the facts before it or fails to explain inconsistent outcomes that aren't readily apparent." *Yousif*, 53 F.4th at 938 (citation modified). Where "cases are materially identical, then the BIA's failure to explain inconsistent outcomes may raise an inference of arbitrary decisionmaking." *Solaka v.*

*Wilkinson*, 844 F. App'x 797, 801 (6th Cir. 2021) (citation modified). "[W]hen the BIA inadequately explains its decision to the point where we cannot determine whether the BIA abused its discretion or acted arbitrarily and capriciously, we must remand to the BIA to explain its reasoning in the first instance." *Makdesion*, 2023 WL 2972548, at *2.

The BIA rejected Hanna's contention that the IJ's decision was arbitrary and capricious with the following reasoning:

> [Hanna] also asserts that Daniel Smith has been previously determined to be an expert in other cases, therefore the Board should do so in this case. However, unpublished Board decisions have no controlling or precedential effect on other cases. Additionally, it is unclear what evidence was presented in the other cases to demonstrate that Daniel Smith was qualified as an expert witness. As such, any prior determination regarding Daniel Smith's qualifications as an expert does not establish that he is entitled to be qualified as expert witness in this case.

AR 4 (internal citations omitted). But we have held that nearly identical reasoning "is not 'adequate' to permit this court to 'engage in a meaningful review' of whether the BIA acted arbitrarily and capriciously." *Makdesion*, 2023 WL 2972548, at *3 (quoting *Hanna v. Mukasey*, 290 F. App'x 867, 873 (6th Cir. 2008)). The BIA's assertion that it is "unclear what evidence" led to Smith being qualified as an expert in other cases does nothing to explain why this case warrants a different outcome. While "some degree of inconsistency is unavoidable," *Al-Koorwi*, 837 F. App'x at 332 (citation modified), "at issue here are not merely inconsistent outcomes, but rather the BIA's failure to *explain* such outcomes in cases that appear to be indistinguishable," *Makdesion*, 2023 WL 2972548, at *4 (citation modified). Because the BIA has failed to explain why this case is different from others in which Smith was qualified as an expert, we **REMAND** the case to the BIA to adequately explain its reasoning.

### III.   CONCLUSION

For the foregoing reasons, we **GRANT** Hanna's petition, **VACATE** the BIA's decision,

and **REMAND** the case to the BIA for proceedings consistent with this opinion.